## MARTIN v. THE CENTRAL LOAN AND TRUST COMPANY.

**Agency : PAYMENT : WAIVER : ESTOPPEL.** Plaintiff held a mortgage for three hundred dollars on one-half of K.'s quarter section of land. K. procured of the defendant company a loan of fifteen hundred dollars on the land, and stipulated that the mortgage to the company should be the first lien. There were other encumbrances on the land at the time. K. secured his loan through his agents E. and L. The company sent certain drafts to L. for portions of the fifteen hundred dollars, and one of these was for three hundred dollars payable to plaintiff. The drafts were not sent for absolute delivery, but for delivery on certain conditions, and the company's instructions to L. advised great caution in paying out the money, the evident purpose being that he should see that the title was good, and that all prior liens should be paid off. L., as thus advised, gave the three-hundred-dollar draft to E., who took it to plaintiff while he was at work in the field, and procured him in a hurried manner to endorse it, upon the statement that the loan was to pay off prior encumbrances, but that the company had sent only a part of the money, and not enough to pay off all the liens, but that more had been sent for, and that he wanted to use the three hundred dollars to pay off liens at a neighboring town, and that plaintiff's mortgage should be paid the first time he came to town. Plaintiff had no previous knowledge that the company was to pay off his mortgage, and it never was in fact paid, but, of the three hundred dollars procured on the draft, a part was used to discharge other liens, and a part was kept by L. and a part by E. In this action to have plaintiff's mortgage established as the prior lien, *held*—

(1) That in handling the draft, procuring the endorsement and disbursing the money, L. was the agent of the company, and not of K.

(2) That the endorsement of the draft by plaintiff was not a payment of his mortgage by the company, nor a waiver of the priority of his lien, nor did it estop him from asserting such priority in this action.

*Appeal from O'Brien District Court.*—HON. SCOTT M. LADD, Judge.

FILED, OCTOBER 16, 1889.

THE issues of this action are as to the priority of mortgages held by the parties respectively. The district court gave judgment for the plaintiff, from which the defendant appeals.

*Hughes & Hastings*, for appellant.

*Parker & Richardson*, for appellee.

GRANGER, J.—D. W. Kenyon and others are co-defendants with the Central Loan and Trust Company. The Central Loan and Trust Company alone appeals. There is no important dispute as to the facts of this case, and they are briefly as follows: The plaintiff sold to the defendant Kenyon eighty acres of land, and took a mortgage to secure three hundred dollars of the purchase price. Kenyon, owning one hundred and sixty acres of land, desired a loan of fifteen hundred dollars, and in writing appointed George H. Elliott and C. N. Lyons as agents to procure it; the appointments being separate. The loan was obtained from the Central Loan and Trust Company. At the time of this loan there were other encumbrances on the land, including one to the school fund of O'Brien county. By agreement between Kenyon and the loan and trust company the mortgage of the company was to be the first lien on the land, and it was understood that the money secured by the loan from the company was to be used to pay off and cancel prior liens. It does not appear from the record that Martin had knowledge of the contract or arrangement between Kenyon and the loan and trust company. For the purpose of paying off the

prior encumbrances the loan and trust company sent to C. N. Lyons certain drafts, and among them was one payable to the order of the plaintiff, in these words:

"DES MOINES, IOWA, August 21, 1886.

"*Central Loan & Trust Co. :* Pay to the order of N. L. Martin, Esq., three hundred dollars.

"D. B. LYONS, Treas.

"To Chemical National Bank, New York."

C. N. Lyons delivered the draft to Elliott, with instructions to take it to Martin, and have him endorse it, which was done, and the draft was paid to Elliott by the bank at Sutherland. Of the money C. N. Lyons took one hundred dollars, and directed Elliott to take two hundred dollars, and pay judgments and taxes so far as it would go. Elliott paid out part of the two hundred dollars as directed, and kept the balance. Martin received no part of the proceeds of the draft. The other drafts sent to C. N. Lyons were applied in the discharge of encumbrances, so far as the record discloses. The draft designed for Martin was duly paid in New York, and returned to the loan and trust company. Other facts, as shown by the evidence, may be noticed in the discussion of the question involved.

The prominent point of contention in the case is as to the legal effect of the conduct of Martin in endorsing the draft, whereby Elliott obtained the money designed by the loan and trust company to discharge his lien by the payment of his claim. The views of the parties are not in exact accord as to the character in which C. N. Lyons acted in the receipt and disposition of the drafts. The plaintiff is inclined to regard him as the agent of the loan company, while the company, in argument, treat him as the agent of Kenyon. There is no pretense that he was the agent for Martin, unless Martin made him such by intrusting him with the draft after the endorsement. We think the record shows quite clearly, when all considered, that as to the payments of liens and some other matters connected with the loan the company relied on Lyons to act for it. A prominent feature of the transaction in this respect is the fact that

the borrower was not to receive the money loaned, except a residue after the discharge of encumbrances; and there is a manifest showing that the company undertook to guard its interests in this respect with care. Mr. D. B. Lyons, as treasurer of the loan company, in a letter to C. N. Lyons, gives him quite minute instructions how to act, and among other things says: " Before paying a dollar on the Kenyon loan, you should examine the deeds, to see that both are correct,—the one from the man who was guardian for 39–76." Then, after other instructions, he adds: "Be very careful about these points, and, if there are doubts, do not pay out money, but advise us about it. Do not pay taxes, etc., till the deed business is settled. If there be anything else to say, Mr. Campbell will write you." Mr. Campbell was assistant treasurer of the loan company. These facts, viewed in the light of the transaction, are inconsistent with the idea that C. N. Lyons was acting in these particulars other than as the agent of the loan company. Whether for compensation or not, he was, at the instance of the company, acting for it. These transactions were in August, 1886. In March, 1887, and after the commencement of this suit, Mr. Campbell, as assistant treasurer of the company, in a letter to Mr. Kenyon, while acting for the company in reference to this matter, and speaking of the draft in question, used these words: " We sent the draft of three hundred dollars, made to the order of A. L. Martin, to our agent, Mr. C. N. Lyons, Spencer, Iowa." There is nothing in the record to contradict the facts as stated, and with such a record we must assume that C. N. Lyons was the agent of the company for the purpose of applying the money sent to pay off encumbrances.

Appellant, in different divisions of the answer, pleads waiver, estoppel and payment, all based on alleged facts as to the draft in question. The theory on which appellant seeks to sustain his pleas is that Martin endorsed the draft, whereby its proceeds were wrongfully applied. The particular facts as to the endorsement are these, as shown by the testimony of plaintiff

and Elliott, and as to such facts there is no dispute: Elliott drove to the home of plaintiff with the draft, and asked him to endorse it, which he did.  Martin was working in his field, and the transaction as to the endorsement was a hurried one.  Martin had no previous knowledge that the loan and trust company was to pay off his mortgage.  Elliott told him the money was to pay off prior encumbrances on the land, and that there was not money enough; that one thousand dollars had been sent, and that he had sent for five hundred dollars more; that he (Elliott) wanted to go to Cherokee, and pay off some encumbrances on the place before plaintiff's mortgage was paid, and that plaintiff would get his quicker in that way; that there was six hundred and fifty dollars to be paid at Cherokee, and three hundred dollars at Primghar; that when plaintiff came to Sutherland he should come into his (Elliott's) office and get his money.  The testimony unmistakably shows that a part of the proceeds of the draft was paid out in the discharge of other prior liens, and went directly to the use of the loan and trust company; to what extent is uncertain.  Just what prejudice the loan and trust company has sustained in consequence of the endorsement of the draft, if any, is not ascertainable from the record before us, as the cause was not tried with reference to that fact.  What we are asked to do is to adjudge the plaintiffs' claim paid and his lien discharged because of the endorsement.  This would be unconscionable from the fact of the loan and trust company's having sustained no such prejudice, even under the most favorable condition of the record as to the company, and again we see no reason for the application of such a rule against the plaintiff.  The loan and trust company had never apprised him of its intention to pay off his mortgage, and he merely acted at the instance of one legally in custody of the draft for the company.  The instructions to Lyons as to the payment of the money invested him with a discretion as to payments dependent upon conditions as to the title of the land.  The draft was not sent for absolute delivery, but to be delivered on certain

conditions as to title. Lyons seemed to think it best not to deliver the draft to Martin, but to secure the money, and use it otherwise in removing encumbrances; and to this end he sent Elliott to procure the endorsement. Any misappropriation of the money followed this act of Lyons. Under such circumstances, the endorsement cannot be regarded as a payment, waiver or estoppel.

Other points are made in argument, but with this disposition of the case it is unnecessary to consider them. The judgment below is AFFIRMED.